UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORRAINE L. WILLIAMS,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | ) No. CV-04-3143-MWL<br>)<br>) ORDER GRANTING DEFENDANT'S<br>) MOTION FOR SUMMARY JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on October 3, 2005. (Ct. Rec. 12, 15). Plaintiff Lorraine L. Williams ("Plaintiff") filed a reply brief on September 19, 2005. (Ct. Rec. 22). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12). ///

1                              **JURISDICTION**

2        On August 17, 2001, Plaintiff protectively filed an

3   application for Disability Insurance Benefits ("DIB"), alleging

4   disability since October 4, 2000, based on back and shoulder

5   injuries, possible nerve impingement, possible carpal tunnel

6   syndrome, tendonitis - bilateral, neck pain and headaches.

7   (Administrative Record ("AR") 131-134, 262, 283).  The application

8   was denied initially and on reconsideration.  On January 27, 2003,

9   Plaintiff appeared before Administrative Law Judge ("ALJ") Verrell

10  Dethloff, at which time testimony was taken from Plaintiff,

11  vocational expert William Cagle and Plaintiff's husband, Steven

12  Ford.  (AR 33-59).  A supplemental hearing was held by the ALJ on

13  March 10, 2003, where additional testimony was elicited from

14  Plaintiff and Mr. Cagle to clarify vocational issues.  (AR 60-69).

15  On March 26, 2003, the ALJ issued a decision finding that

16  Plaintiff was not disabled.  (AR 22-32).  The Appeals Council

17  denied a request for review on November 26, 2004.  (AR 11-14).

18  Therefore, the ALJ's decision became the final decision of the

19  Commissioner, which is appealable to the district court pursuant

20  to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial

21  review pursuant to 42 U.S.C. § 405(g) on December 28, 2004.  (Ct.

22  Rec. 2).

23                          **STATEMENT OF FACTS**

24       The facts have been presented in the administrative hearing

25  transcript, the ALJ's decision, the briefs of both Plaintiff and

26  the Commissioner and will only be summarized here.  Plaintiff was

27  51 years old on the date of the ALJ's decision.  (AR 32, 132).

28  She stands approximately 5'6" tall, weighs about 136 pounds and,

has completed one semester of classes at the college level. (AR 41).

At the administrative hearing held on January 27, 2003, Plaintiff stated that she last worked in 2000 at the Goodwill Industries. (AR 36). She indicated that she was trained as a cashier and worked as a pricer, sorter, ticketer and stockperson at Goodwill from 1995 to 2000. (AR 36-37). At the supplemental hearing held on March 10, 2003, Plaintiff testified that Goodwill trained her for cashiering, but, because of her hearing difficulties, she was moved to the production area and performed work as a sorter, pricer, stocker and ticketer. (AR 63). She stated that she worked as a cashier for about one year. (AR 63).

Plaintiff testified that, while working at Goodwill, she injured her shoulder from constant, repetitive motion and injured her back avoiding a falling box of glassware. (AR 37-38). Prior to working at Goodwill, Plaintiff indicated that she worked for 23 years as a bartender, cocktail waitress, food server and cook. (AR 38). As a bartender, she stated she ran a cash register many times. (Ar 64).

Plaintiff testified that she spends her day trying to keep up with household chores, she goes out with her husband once every two weeks, and goes grocery shopping, with her husband's assistance, about once a week. (AR 39). She stated that, other than her medication for her asthma, the only medication she was taking at the time of the administrative hearing was Tylenol. (AR 41). Plaintiff indicated that she smokes about one-half to three-quarters of a pack of cigarettes per day and occasionally drinks alcohol. (AR 41-42).

Plaintiff stated that she has had neck pain and migraine headaches since injuring her shoulder. (AR 43). She indicated that she experienced migraine headaches about once a week. The migraine headaches prevented her from working, because she became nauseated. (AR 43). However, she further indicated that she has not had a migraine headache since a week or two after she quit working at the Goodwill. (AR 45). She stated that she has a limited range of motion with her neck and has problems lifting weight with her right arm and hand. (AR 45). She indicated that she also has difficulty sleeping due to her shoulder and back pain. (AR 42).

Plaintiff testified that she had her hearing tested in 1995 by the Department of Vocational Rehabilitation. (AR 46). She indicated that the results of the testing revealed "a really bad hearing loss" and since that time her hearing has gotten worse. (AR 46). At the supplemental hearing held on March 10, 2003, Plaintiff indicated that she did not wear hearing aids but had an upcoming audiology test. (AR 63).

Since the shoulder injury, Plaintiff stated that she no longer goes bowling and she is no longer able to do embroidery. (AR 46-47). She cannot sit through a movie at the theater or at home and is no longer capable of sweeping, mopping or vacuuming. (AR 49). She indicated that she could wash the dishes, but it takes her a long time because she does them a few at a time with rests in between. (AR 49-50). Plaintiff also stated that she could not grab and lift a gallon of milk out of the refrigerator and needed assistance with heavy items while grocery shopping. (AR 50). She indicated that she could sit for 15 minutes on a

good day before having to get up and stand for five to 10 minutes. (AR 50-51). Plaintiff testified that the greatest distance she is able to walk is probably about one-half of a block. (AR 42-43).

Vocational expert William Cagle testified at the administrative hearing held on January 27, 2003, and again at the supplemental hearing held on March 10, 2003. (AR 51-55, 64-68).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether

Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity ("RFC") and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation.

The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v.*

*Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 31). At step two, the ALJ determined that Plaintiff has the severe impairments of status post right shoulder arthroscopy and subacromial decompression, status post remote back strain, and cervical spondylosis, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 23). The ALJ concluded that Plaintiff has the RFC to perform light exertion work, with the limitation of 15 pounds lifting and carrying with the right arm,

and work above or at shoulder level limited to occasional. (AR 24, 28). At step four of the sequential evaluation process, the ALJ found that, based on Plaintiff's ability to perform light exertion level work, with limitations, coupled with the vocational expert's testimony, Plaintiff could return to her past relevant work as a sales attendant in the retail trade. (AR 31). Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31-32).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ erred by failing to conclude that Plaintiff's hearing loss was a severe impairment;

2. The ALJ erred by improperly rejecting the opinions of Plaintiff's treating and examining physicians; and

3. The ALJ erred by failing to conduct an adequate step four analysis to find that Plaintiff was capable of returning to her past relevant work.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  Severe impairment**

Plaintiff contends that the ALJ erred by concluding that her hearing loss was not a severe impairment. (Ct. Rec. 13, pp. 13-14). Plaintiff asserts that it is clear from the record that

Plaintiff has hearing problems, yet the ALJ failed to make mention of it when evaluating Plaintiff's claim at step two. (Ct. Rec. 13, p. 14). The Commissioner responds that Plaintiff did not meet her burden of establishing the existence of significant limitations resulting from her alleged hearing loss. (Ct. Rec. 16, pp. 6-9). The undersigned agrees.

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Plaintiff has the burden of proving that she has a severe impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that she is disabled. 20 C.F.R. § 416.912(a). In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. SSR 96-4p.

In this case, the ALJ evaluated the evidence of record, considered the hearing testimony, and concluded that Plaintiff did not have a severe hearing impairment. (AR 23). The ALJ specifically found that Plaintiff has the severe impairments of status post right shoulder arthroscopy and subacromial decompression, status post remote back strain and cervical spondylosis, but made no mention of hearing loss. (AR 23).

///

///

As noted by the Commissioner, Plaintiff bears the burden of establishing the existence of a severe impairment. (Ct. Rec. 16, p. 7). Plaintiff fails to demonstrate she disclosed any medical evidence for the ALJ's review exhibiting that she was significantly limited by a hearing impairment.

Plaintiff was evaluated by Rodney Thompson, M.S., CCC-A, at Thompson Audiology & Hearing Aid Center on March 17, 2003. (AR 755-756). The results of the evaluation revealed a moderate to moderately severe sensorineural hearing loss in the mid to high frequencies and a moderate to severe high frequency sensorineural hearing loss in the left ear, findings consistent with a history of noise exposure. (AR 755). However, although the records from the audiological evaluation were submitted to the Appeals Council (AR 14, 755), there is no indication that the ALJ received this evidence prior to making his March 26, 2003 determination in this case.[1] Moreover, even if this report of moderate to severe hearing loss had been submitted for the ALJ's review, Plaintiff fails to show how this moderate to severe hearing loss resulted in

---

[1]42 U.S.C. § 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter. *Id.* If new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984). Even if Plaintiff could show good cause for failing to submit the report at an earlier date, the undersigned finds that the evidence is not sufficiently material to compel a remand to the ALJ. The audiological evaluation provides no reasonable basis for changing the outcome of the ALJ's decision in this case.

significant limitations in her ability to do basic work activities.

In addition, while Plaintiff asserted in her opening brief that Dr. Rubin's physical RFC assessment noted a limitation on exposure to concentrated noises (Ct. Rec. 13, p. 14), the record reflects that Dr. Rubin found that Plaintiff should avoid constant loud background noise, but did not otherwise find that Plaintiff was restricted by hearing difficulties (AR 725).

Plaintiff fails to point to any medical evidence from Plaintiff's physicians assessing any limitations related to hearing loss, except for the audiological evaluation which may never have been presented to the ALJ prior to his determination in this matter. (Ct. Rec. 16, p. 8). An impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff did not meet her burden at step two of the sequential evaluation process to establish the existence of a severe hearing impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. Accordingly, the ALJ's determination at step two is without error in this case.

**B.  Medical Opinions**

Plaintiff contends that the ALJ erred by rejecting the opinions of Plaintiff's examining physicians, Saleem Khamisani, M.D., and John Coker, M.D., and treating physicians, Gerardo R. Melgar, M.D., and Theodore H. Palmatier, M.D. (Ct. Rec. 13, pp. 15-16). The Commissioner responds that the ALJ appropriately considered and addressed the medical evidence of record. (Ct. Rec. 16, pp. 9-13).

///

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of

a nonexamining, nontreating physician only when he gives specific,
legitimate reasons for doing so, and those reasons are supported
by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179,
184 (9th Cir. 1995).

As correctly noted by the Commissioner, Plaintiff fails to
identify with specificity the ALJ's alleged error in rejecting the
medical opinions of examiners Khamisani and Coker. (Ct. Rec. 16,
p. 10). Instead, Plaintiff's argument focuses on the ALJ's
rejection of Plaintiff's treating physicians, Drs. Melgar and
Palmatier, as related to Plaintiff's shoulder and back
impairments. (Ct. Rec. 13, pp. 15-16; Ct. Rec. 22, pp. 2-5).

The ALJ determined that Plaintiff has severe back and
shoulder impairments, and, as a result, Plaintiff has the RFC for
only light work, with the right arm limited to 15 pounds of
lifting and carrying, and work above or at shoulder level limited
to occasional only. (AR 23-24).

In reaching his RFC determination, the ALJ accorded weight to
the opinions of nonexamining physician, Dianne Rubin, M.D., who
completed a physical RFC assessment on November 8, 2000, and again
on December 11, 2001. (AR 24-25, 670-675, 721-728). On November
8, 2000, Dr. Rubin found that Plaintiff was restricted in that she
should only occasionally climb and balance, was limited in
reaching in all directions (including overhead), and should avoid
concentrated exposure to hazards. (AR 671-673). Dr. Rubin opined
that Plaintiff was not otherwise limited, including a finding that
Plaintiff had no established exertional limitations. (AR 671-
673). However, on December 11, 2001, after reviewing the updated
record, Dr. Rubin opined that Plaintiff could occasionally lift

and carry 20 pounds, frequently lift and carry 10 pounds, and stand and/or walk or sit about six hours in an eight-hour workday. (AR 722). Dr. Rubin also opined that Plaintiff would be limited to no constant repetitive use of her right shoulder, never climbing ladders, ropes or scaffolds, only occasionally stooping, crouching or crawling, and should avoid concentrated exposure to noise, fumes, odors, dusts, gases, poor ventilation, etc. and hazards. (AR 722-725).

Dr. Rubin noted that Plaintiff had a right shoulder arthroscopy with intra-articular debridement and subacromial decompression for an impingement syndrome on August 10, 2000, and that a six-week follow up to the surgery revealed "excellent progress." (AR 727). Dr. Rubin indicated that doctor's notes from December 14, 2000, released Plaintiff to work without restriction, Dr. Palmatier also released her to work in early January 2001, and February 2001 x-rays of the bilateral shoulders were normal. (AR 727).

Dr. Rubin also indicated that medical reports noted complaints of neck pain and chronic low back pain. (AR 727). February 7, 2001 x-rays revealed disc space narrowing at C4-5, C5-6 and C6-7 which Dr. Rubin reflected in her RFC determination by restricting Plaintiff's overhead reaching. (AR 727). As to Plaintiff's complaints of back pain, Dr. Rubin indicated that the record did not reveal multiple medical visits for this complaint, and Plaintiff's report of an MRI showing disk herniation was unsubstantiated and unconfirmed by the x-ray reports. (AR 727).

///

///

As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. However, Dr. Rubin's findings are supported by substantial record evidence.

As noted by the ALJ, an MRI of the cervical spine on April 25, 2000, indicated degenerative disc changes and spondylosis but no herniation or evidence of significant nerve involvement. (AR 27, 538-539, 668-660). An examining neurosurgeon, John M. Henderson, M.D., indicated that the MRI scan and x-rays of the cervical spine demonstrated that any neck discomfort was likely unrelated to her alleged shoulder pain. (AR 27, 665-666). An orthopedist, Thomas L. Gritzka, M.D., agreed with the findings of Dr. Henderson concluding that Plaintiff's symptoms were not due to cervical problems but were more likely the result of a shoulder abnormality. (AR 27, 658).

The ALJ further noted that on November 8, 2000, following an August 10, 2000 surgery on her shoulder, Plaintiff's treating physician, Thomas C. Kennedy, M.D., indicated that Plaintiff was making satisfactory progress and it was recommended that she be released to full duty work, without restriction, as of November 13, 2000. (AR 27, 680). Dr. Kennedy noted that Plaintiff had informed him that she quit her job because she wanted to find a different type of employment. (AR 680). On December 14, 2000, Plaintiff presented to her treating physician, Dr. Palmatier and reported shoulder pain. (AR 693). It was noted that Plaintiff was doing computer training at home. (AR 27, 693). Dr. Palmatier released her to normal duty work, without restriction, on December 14, 2000. (AR 27, 692).

On February 27, 2001, Plaintiff was examined by Chester S. McLaughlin, M.D.  (AR 27, 703-712).  As noted by the ALJ, Dr. McLaughlin assessed her with a 5% impairment of the right shoulder and indicated lifting should be limited to 35 pounds.  Dr. McLaughlin indicated Plaintiff's examination revealed nonphysiologic findings and subjective complaints in excess of her objective findings.  (AR 27, 709).  He noted her neck pain was probably referred from the shoulder, her grip strength on the right was invalid, apparently due to lack of cooperation, she had no signs of atrophy, and there was only a slight loss of motion in the right shoulder and some pain in motion of the left.  (AR 27, 710-712).  Dr. McLaughlin opined that Plaintiff was employable on a reasonably continuous basis, but should avoid overhead activities using the right upper extremity.  (AR 712).

The ALJ also referred to a November 15, 2001 consultative examination performed by Dr. Khamisani.  (AR 28, 713-717).  Dr. Khamisani concluded that Plaintiff's examination demonstrated a lot of pain behavior, symptom magnification, and nonphysiological findings.  (AR 28, 717).  He indicated that she should avoid repetitive right upper extremity use at or above shoulder height, lifting no more than 20 to 25 pounds with the right upper extremity, limited repetitive motions of the neck, and, due to possible degenerative arthritis of the lumbar spine, should avoid repetitive bending, twisting, stooping, squatting and climbing.  (AR 28, 717).

As noted by the ALJ, Plaintiff was again examined by Dr. Khamisani, in tandem with Dr. Coker, on December 23, 2002.  (AR 28, 729-741).  It was noted that constant overhead use of the

right arm eliminated work as a sorter at Goodwill.  (AR 28, 739).
The doctors found a 9% limitation on the right shoulder and opined
that Plaintiff should be limited to lifting 10 to 15 pounds with
the right arm with the avoidance of use of the right arm above
shoulder height.  (AR 28, 738-739).

With regard to Plaintiff's argument as to Dr. Palmatier,
Plaintiff does not specify which report in the administrative
record supports her assertion that the ALJ erred in his assessment
of the evidence regarding Plaintiff's shoulder impairment.  (Ct.
Rec. 13, 22).  However, a review of the record reveals that the
vast majority of the reports from Dr. Palmatier reference a time
prior to Plaintiff's alleged onset date of October 4, 2000.  (AR
484-517, 569-604, 611-643).  It appears that the report Plaintiff
relies on in support of her argument with regard to Dr. Palmatier
is a January 14, 2000 report which indicated that Plaintiff could
work up to six hours per day, four days per week, with no lifting
or reaching above shoulder height with her right arm and no
lifting exceeding 10 pounds.  (AR 602).  Less than 11 months
later, Dr. Palmatier would opine that Plaintiff could return to
normal duty work with no restriction.  (AR 700-702).  The duration
requirements of the act require an impairment to be disabling for
12 continuous months.  42 U.S.C. § 1382c(a)(3)(A).

The reports of Dr. Palmatier pertaining to the time period
Plaintiff claims she became unable to work indicate that Plaintiff
quit her job at Goodwill because she did not feel she could work
at a job that requires her to reach above shoulder level or
required repetitive use of her right arm.  (AR 610).  However, on
///

October 6, 2000, Dr. Palmatier opined that Plaintiff could perform the physical activities of the light duty job of store greeter/stocker. (AR 608). On October 26, 2000, Dr. Palmatier diagnosed Plaintiff with a shoulder sprain (post op Arthroscopy 8-10-2000), and indicated that Plaintiff could work up to four hours per day, lifting no greater than five pounds, with no bending, no reaching above lower chest height and no repetitive use of hand greater than six cycles per minute. (AR 605). However, on November 8, 2000, Dr. Palmatier noted that Plaintiff's right shoulder sprain had improved, and that she could return to normal duty work with no restriction. (AR 700-702). On November 27, 2000, Plaintiff reported a worsening of her right shoulder sprain. (AR 697). Nevertheless, Dr. Palmatier released her to normal duty work with no restriction. (AR 696). Dr. Palmatier was of the same opinion on December 14, 2000. (AR 692). On December 31, 2000, Dr. Palmatier indicated that the maximum medical improvement had been reached and no further curative treatment was recommended. (AR 690).

     The substantial weight of the record evidence supports the ALJ's finding that Plaintiff's shoulder impairment limits her to the performance of light exertion work, with the right arm limited to 15 pounds lifting and carrying, and work above or at shoulder level limited to occasional. (AR 24, 28). The record medical evidence supports the ALJ's reliance on the nonexamining physcian, Dr. Rubin. Dr. Palmatier's findings regarding Plaintiff's shoulder impairment are not inconsistent with the opinions of Dr. Rubin or the findings of the ALJ. Accordingly, the ALJ did not err in this regard.

Plaintiff again fails to point to specific reports in the administrative record which support her assertion that the ALJ erred in his assessment of the evidence regarding Dr. Melgar's opinion regarding her back impairment. (Ct. Rec. 13, 22). Moreover, a review of the record reveals that all of the reports from Dr. Melgar predate Plaintiff's alleged onset date of October 4, 2000. (AR 330-343,472-473). Dr. Melgar treated Plaintiff from May 1997 to August 1997, diagnosing her with low back pain and chronic lumbar strain due to an on-the-job injury while at Goodwill. (AR 330-343). Dr. Melgar still found that Plaintiff could continue working four hours a day, and that she could perform the duties of sorter-pricer and bin-ticketer at Goodwill. (AR 330, 334). On October 9, 1998, Dr. Melgar completed a form indicating that, despite her recurrent low back pain due to a lumbar strain, Plaintiff's condition was fixed and stable, she could lift up to 20 pounds, and she had no restrictions with standing, walking, or sitting. (AR 472-473). Dr. Melgar's 1997 and 1998 reports do not support Plaintiff's assertion of greater limitations than assessed by the ALJ. Dr. Rubin noted that the record did not reveal multiple medical visits for back pain complaints, and Plaintiff's report of an MRI showing disk herniation was unsubstantiated and unconfirmed by the x-ray reports. (AR 727). Dr. Rubin's findings, as well as the weight of the record evidence, support the ALJ's determination that "there is no documentation of any significant lumbar impairment, nor any significant treatment of any lumbar impairment, other that a very remote lumbar sprain." (AR 28).
///

It is significant to note, as the ALJ did in this case (AR 30), that while the opinions of the physicians have varied over time, all have indicated that Plaintiff can work despite her limitations.

The ALJ's findings regarding Plaintiff's limitations and RFC are supported by the weight of the evidence of record, including the findings of Drs. Melgar and Palmatier, and are based on proper legal standards. Thus, there is no error regarding the ALJ's RFC determination in this case. The evidence of record supports the ALJ's conclusion that Plaintiff is capable of performing light exertion work, with the restrictions noted.

**C.    Step Four Analysis**

Plaintiff lastly contends that the ALJ erred by failing to conduct an adequate step four analysis. (Ct. Rec. 13, pp. 16-19). The Commissioner responds that, given the ALJ's accurate RFC determination, the ALJ properly relied on the vocational expert's testimony to find that Plaintiff could perform her past relevant work as a sales attendant in the retail trade. (Ct. Rec. 16, pp. 13-15).

At step four of the sequential evaluation process, the Commissioner determines whether the claimant can perform work she has performed in the past. If the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant meets her burden of establishing she cannot perform this work, the burden shifts to the Commission to show, at step five in the process, that the claimant is able to perform other substantial gainful work in the national economy in view of her age, education and work

experience.   20 C.F.R. §§ 404.1520(f), 416.920(f); *see, Bowen*, 482
U.S. at 137.   Thus, the claimant has the initial burden of proving
she cannot perform her past relevant work, and only then does the
burden shift to the Commissioner to demonstrate that she can
perform a significant number of jobs in the national economy.
*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

Based on Plaintiff's ability to perform light exertion level
work, coupled with the vocational expert's testimony, the ALJ
found that Plaintiff could return to her past relevant work as a
sales attendant in the retail trade.  (AR 31).  As noted above,
the ALJ properly found no severe impairment as a result of an
alleged hearing loss and properly relied upon Dr. Rubin to find
that Plaintiff has the RFC to perform light exertion work with the
restrictions of carrying only 15 pounds with the right arm and
working at or above shoulder level on only an occasional basis.
*See*, *supra*.  This RFC finding was supported by substantial
evidence and free of legal error.  Accordingly, the hypotheticals
based on the ALJ's RFC determination, presented to the vocational
expert (AR 52, 65-66), and relied upon by the ALJ in making his
disability determination (AR 31) were also appropriate.  The ALJ's
conclusion at step four of the sequential evaluation process that
Plaintiff could return to her past relevant work as a sales
attendant in the retail trade is thus based upon substantial
evidence and free of legal error.  Plaintiff fails to demonstrate
otherwise.

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this
Court finds that the ALJ's decision that Plaintiff is capable of

performing light exertion work, with the limitations noted, including her past work as a sales attendant, is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 12) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Ct. Rec. 15) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___16th___ day of January, 2007.

                                s/Michael W. Leavitt
                            MICHAEL W. LEAVITT
                        UNITED STATES MAGISTRATE JUDGE